My name is Charles Bonner and I represent the appellant plaintiffs. There are seven points that I'd like to discuss, each of which require reversal of the trial court's judgment in order in this case. And in talking about those seven points, I will hit on a few key cases, mainly six, Imler, Burns, Buckley, Kalina, Malley and Hartman, a very new case that just came out in April of this year that is very important. Which one, I'm sorry? This is Hartman v. Moore. It has relevance to the constitutional violations claim, mainly the retaliatory First Amendment claim, retaliatory prosecution, First Amendment violation claim. As a threshold issue, the Imler court very clearly indicated that the prosecutor has to be involved in some conduct intimately associated with the judicial phase of the And the first point I want to address is whether or not the trial court addressed the burden of proof on behalf of the governmental official here, District Attorney Hallinan, in determining what was his function. Burns, which was decided, of course, 15 years after Imler, made it very clear that the official seeking absolute immunity bears the burden of showing that the absolute immunity is justified for the function in question. And that point was reiterated in Buckley, where the court stated the question then is whether the prosecutors have carried their burden of establishing that they were functioning as advocates when they were endeavoring to determine whether the boot print at the scene of the crime had been made by the petitioner's foot. In this case, yes? Are we dealing with a 12b6 motion here? We're dealing with a 12b6 motion. So burdens of proof are a little odd in that context. The question is really, what have you alleged that would even prima facie be adequate? It's not really a burden of proof question. There's no proof. There's no evidence here. Yeah, it's an allegation. And we have alleged very specifically in paragraph 51 and 52 of the complaint that District Attorney Hallidan did not have any probable cause to initiate this prosecution. We've alleged that he knew at all times. But the problem is that you have, you know, onerous and, you know, difficult law to overcome here. I mean, do you disagree that the state of the law is that if he did exactly what you say, that is, he prosecuted with no probable cause, that you have no, that he has absolute immunity? I disagree that that is the law. The law is very definitely stated in Buckley v. Fitzsimmons. And Buckley v. Fitzsimmons states very clearly and succinctly that a prosecutor neither is nor should consider himself to be an advocate before he has probable cause to arrest anyone. In other words, Buckley draws a yellow bright line down as to probable cause as to whether there is advocacy and therefore absolute immunity versus investigative, administrative, and qualified immunity. And you think it's a functional line that only sets in after the indictment? It's a function that sets in when there's probable cause. In other words, there's pre-probable cause, there's only qualified immunity. There's post-probable cause, there's absolute immunity. But simply because you go to the grand jury does not give you the cloak of absolute immunity. It does not mean you function as an advocate. If we read Buckley somewhat differently, that as long as you go to the grand jury and ask for an indictment, you know you don't have probable cause, but you use the grand jury, which is the way you're supposed to go, and you're not investigating yourself, you're not personally getting out and doing any investigating work, but you're doing what prosecutors do. If we read it that way, how did the prosecutor here violate Buckley? He violated Buckley because, again, you have to have, before you go to the grand jury, you have to have some evidence. Didn't Buckley say exactly the opposite? Didn't Buckley say that there is absolute immunity for investigative acts made before probable cause, but you're entitled to absolute immunity for malicious prosecution even if you lack probable cause? Yeah. Buckley says that if you don't have probable cause, you can't be an advocate, period. It doesn't say that. It says the opposite. It says a prosecutor – just a minute. A prosecutor would be entitled to absolute immunity for the malicious prosecution of someone whom he lacked probable cause to indict. Well, if you look at – that's – I think you're reading the footnote 5, that that is correct. But that – see, footnote 5 has to do with state cause of action regarding malicious prosecution. They're talking about the historic evolution of absolute immunity. Essentially, the federal absolute immunity for prosecutors is standing directly on state malicious prosecution law. I mean, that's what – But exactly. But here we're dealing with 1983. That is qualitatively different than the state law of malicious prosecution. May I suggest to you that what would be more helpful to me and where I think you are more likely to persuade me of something involves the issues around the defamation action. Sure. And the question of how the defamation action is linked to whatever employment consequences came forward or did not. Certainly. That was my very next point, which is that Hallinan's statements to the media are not entitled to absolute immunity. Again, Buckley made it very clear that comments to the media have no functional tie to the judicial process just because they are made by a prosecutor. And that's Buckley at 277. But how do you constitutionalize that from defamation to a constitutional claim? Well, what happened here is the prosecutor went to the media and essentially accused the chief of police and the deputy chief of committing crimes, of obstructing justice. Assume for the purpose of argument that he defamed him. He defamed him. All right. Assume that for the purpose of argument. It's a twofold point. First of all, he defamed him without probable cause, and that's a violation of the Fourth Amendment and that he's been portrayed in a false light. He's been involved. Well, just a minute. Defamation is a state court action. How do you get from let us assume for the argument that he made defamatory remarks. How do you get from that to your constitutional claims? Well, first of all, the defamatory remarks we've alleged was also in retaliation for the chief exercising his First Amendment rights. Well, I'm complaining. Spin it out for us. So the way it spins out is the chief has a First Amendment claim, a First Amendment right to free speech. And when he complains about Helen Ann's solicitation that have your officers plead guilty and I'll give him a slap on the hand when the chief complains to the mayor and to the state attorney general, Helen Ann then goes to the media and initiates this smear campaign. So that that is a retaliatory First Amendment violation. And that is squarely within law. As I understand it, at that juncture is that defamation itself as Paul is not a 1983 cause of action unless there are other interests involved as well. All right. So what are the other interests? Well, it's the other interest goes to the damages. And we allege in the complaint very clearly that the chief suffered a loss of employment, that he suffered a stroke during the arraignment, that he suffered pain and suffering, that he suffered humiliation and embarrassment. We allege very specific damages that he suffered in the complaint. He's an at-will employee to begin with. He has no tenure in his position. He's at-will. That is correct. And he suffered under the 14th Amendment, he has to suffer some sort of property damage, does he not? Well, yes, he has to suffer a due process interest of property loss. And his employment, he was a 30-some-year career tenured employee of the city and county. Now, this appointed position, he had a property interest in his job. He had a property interest in not being defamed where people would say, oh, the chief of police was committing crimes. He almost certainly didn't have a property interest in the, because he was an at-will employee in his police job for procedural due process purposes. The question is whether that carries over to the defamation 1983 context. That seems to me to be the core question. Yes. Well, it does. And again, this was the issue. And we don't want to say it doesn't. You don't want to say it does. Go ahead. But this was the issue that was dealt with in Hartman v. Moore that was decided in April of this year. In that case, the citation on Moore is at April of this year, and I'll have it here. It's 126, Supreme Court, 1695, and footnote 8 at page 1705 is a very important footnote that essentially states that a first, where the prosecutors and investigators, other government officials have brought a retaliatory prosecution without probable cause, that the plaintiff can bring an action against both the investigators and the prosecutor where the prosecutor is operating in the context as an investigator. It is our contention here that District Attorney Hellinan was always operating in the context of an investigator. He never crossed over the right line into probable cause, just like in Buckley. If you recall, in Buckley, there was fabricated evidence, and the Supreme Court said that fabricated evidence does not give rise to probable cause. Essentially, it's no evidence. But do we have that here? In other words, did he participate in the investigations in the same manner as in Buckley? Yes, he did. District Attorney Hellinan spoke with his deputy chief, first deputy chief, Paul Cummins, about the status of the evidence. And the deputy chief, Paul Cummins, told him, we have no evidence. We have no suspicion. We have no probable cause. He pulled down the rules of professional conduct, pulled down the uniform charging ethics for a district attorney, and urged his boss not to go to the grand jury, to which District Attorney Hellinan said, I know I don't have probable cause, but I'm a politician. That is very significant. That is the latest in a complaint. It's significant for this point. The burden is on the official to determine his function. Here, the prosecutor is saying he's not a prosecutor. But even though he knows he has no probable cause, he did not himself go out and investigate. He summoned others to do the dirty work, so to speak. No. He directly himself went and spoke with various officers about whether or not the chief and the deputy chief and his command staff had committed crimes. And what's important is that the birdies – You're not claiming that the problem was anything that came out of that investigation. You're claiming that the problem is that nothing came out of that investigation, and he went ahead anyway. Yes. And he went ahead knowing that he had nothing out of the investigation, and he went ahead because he was a politician, not an advocate. And he admitted that, and that spread in the complaint. He says, I'm a politician. If he says he's a politician, then he's admitting he's not an advocate. He's admitting he's not going there as a prosecutor. He's going as a private citizen. He's going as a politician to try to get reelected. But he's not going as an advocate. And you only go as – I mean, I agree with you that this law is disturbing, but it is the law. And that's why we're having a hard time here. I mean, that is the notion that somebody can walk in and say, I know we don't have probable cause, but you read your indictment anyway, doesn't sit well. But you still haven't said anything. And I think Judge Breyer had the same reaction. Nonetheless, that seems to be the case law, unless you can tell us why not. Well, it's not because Buckley very clearly states, and Justice Scalia even agrees, that if the bright line is probable cause, and that if there's no probable cause, there's no advocacy, no – you start with evidence. If you have no evidence, then you have no probable cause. In Buckley, you had fabricated evidence. The distinction between fabricated evidence – But if you were right, you would wash out most of absolute immunity for prosecutors. Because ordinarily, the claim is precisely that you prosecuted me without probable cause. Well, that's a public policy argument that I would argue would be a good idea. I think no one should be above the law of democracy. That should be not a class of people. That is – that's just evidence. That isn't the law that's – the line that's been drawn. Well, in Buckley, the line was clearly drawn because there was fabricated evidence. The court concluded that that essentially was no evidence. And even when the prosecutor went to the grand jury with the fabricated boot prints, the court very clearly said, going to the grand jury does not retroactively give you the status of a prosecutor versus an administrator because you had fabricated evidence. Now, look at this case. Fabricated evidence is no evidence. Here, we have no evidence. The distinction between fabricated evidence and no evidence is a distinction without a difference. Buckley and this particular DA Hallinan did the same thing. One with no evidence, he called fabricated. The other one admitted no evidence. You go to the grand jury with no evidence or with fabricated evidence. It happens to be true that the grand jury has at least – if you go to them with fabricated evidence, they're going to think there is evidence and they're going to not be able to perform their function. If you go to them with no evidence, they ought to be able to perform their function. In this instance, they weren't, but there was nothing stopping them from saying, forget it, we're not doing it. This is why, because the district attorney went there as a complaining party. He went there and admitted that he had no evidence. His deputy, Albert Murray, admitted he had no evidence. But then he stated, we were obstructed, obstructed, obstructed. The we is where the emphasis is. He's now complaining as a witness. He admits he has no evidence. So now he's not functioning as a prosecutor. He's functioning as a complaining witness that he has been obstructed. The we pertains to the district attorney. And as – That's an interesting argument. And as a complaining witness, he's not entitled to immunity under common law. If I were to say that Mr. Raulston has just owed $10,000 for me and I falsely stated that and had him arrested, then he could sue me at common law for malicious prosecution. D.A. Helen N. was in no better position than a complaining witness who maliciously and falsely represented that Chief Sanders and Deputy Chief Robertson had committed a crime and therefore he's only entitled to qualified immunity. He is – he admits that he's not – he doesn't have evidence. So he can't be an advocate. So he always remained in the position of either an investigator or a complaining witness or an administrator or a politician or a citizen. Neither category gives him absolute immunity. Could you help me a little bit more on the First Amendment retaliation claim? Sure. I – I'm not too sure I understand the ramifications of how you say that this involves the First Amendment beyond defamation. Okay. Let me – let me tell you briefly the fraction. One of the cases I've seen is when someone in an employment relationship fires an employee for making legitimate First Amendment statements and retaliates against them. This case is a little bit more causally attenuated. Yes. This case is very much on all fours with this new case, Hartman v. Moore. In Hartman, you had some – a postal independent contractor who had lobbied to have the post office change this optical scanning technology so that the post office could assort the mail very quickly. The postal investigators were upset with his lobbying Congress to get this bill passed. So they launched a criminal investigation against him without any evidence. The court held that this investigation and this criminal charges were a retaliation for his efforts to get this – the post office to change the position. And the court held, and this was the conservative aspect of the Supreme Court, they held that this retaliatory prosecution violated his First Amendment rights to go and speak to Congress, to go and advocate to the public, and that it stated a cause of action so long as he alleged it was without probable cause. Yes, but – but how does that – don't we have case law that specifically says with regard to Paul v. Davis and the defamation issue that you don't help the problem by saying it's a retaliatory defamation, that that doesn't – that that itself isn't sufficient, you still need another interest other than just the reputational interest? No. Well, you need another damage, yes. You need another damage. And so we allege here, contrary to the trial judge's view that we allege nothing more than damage to reputation, as I indicated, we allege that as a result of all these false accusations, this publicity, this smear campaign, which we believe clearly influenced the grand jury, they heard the television articles, they heard television reports, they heard the news reports, they read the newspaper where the chief was accused of committing crimes, all of this prosecution, retaliatory charges being brought against him because he complained, as I mentioned, to the mayor and to the attorney general about Hallinan's conduct and trying to solicit him to obstruct justice. Okay, we're right out of time if you want to say anything. Yeah. I will save three minutes for rebuttal, but the – We don't have three minutes, but we may give you the three minutes. Go ahead. You only have 22 seconds. Thank you. Counsel. Thank you, Your Honor. May it please the Court, Deputy City Attorney Kimberly Bliss for Respondents Terrence Hallinan, the Board of Supervisors in the City and County of San Francisco. I recognize from the judge's questions to my opposing counsel I'm going to be spending most of my time on the defamation claim. But I'd like to briefly address counsel's arguments regarding Hartman. I think Judge Berzon has already adequately responded to the argument that Buckley creates some bright-line rule that probable cause and the absence of probable cause is what determines whether you're an advocate or an investigator. That's not what Buckley says. And it's also not what Hartman says, which is what he implied. And Hartman is also not a retaliatory termination claim. What Hartman said in a footnote, Hartman was a Bivens claim brought against postal inspectors, not prosecutors, postal inspectors, for basically inducing a retaliatory prosecution. And the Court held that a claim could be stated for a retaliatory prosecution if you were to show that the inspectors induced the prosecution, but you had to plead and prove a lack of probable cause. In doing so, there's a single footnote regarding absolute immunity of prosecutors. And basically, all it does is restate the general rule already stated in Imbler, Buckley, and the progeny. And it says that a prosecutor would be entitled to absolute immunity for the same conduct. The malicious prosecution, but not if he was acting as an investigator, which is not an issue that was in Hartman and not an issue that they discussed. So I don't think that Hartman helps the appellants in that regard. All right. Let's go back to Buckley. Yes, ma'am. The complaint does allege that District Attorney Hallihan prevailed upon Lieutenant Duto to initiate the massive investigation of police officers. How do you distinguish his conduct from the conduct in Buckley? Well, the difference, Your Honor, is we are not alleging or arguing, I should say, that investigatory conduct is protected by absolute immunity. And that's also not what the district court found. Instead, the district court found that the allegations regarding investigation did not state a constitutional claim. Buckley did not address whether or not the allegations of fabrication of evidence in Buckley actually stated a constitutional claim under Section 1983. It basically said, we're not addressing that issue. All we're deciding is whether or not absolute immunity applies to the conduct of fabricating evidence. In any event, was there any allegation that the investigation resulted in any fabrication, improper evidence, or anything else? I mean, the only thing that's alleged to be improper about the investigation is that it happened? Not yes, Your Honor. I think the as best I can tell from the arguments is that the allegation is that the investigation is improper because it's retaliatory. Because it was retaliatory. Right. Now, I have the district court didn't find, I couldn't find, and plaintiffs certainly have not cited in any of their briefs at either the district court level or this level, an actual constitutional wrong that took place during the investigation. What about Hartman, then? Why doesn't that hook up by saying if you have a retaliatory investigation, you wouldn't have had otherwise? It doesn't actually. And it turned out that there was no probable cause. It's actually – Hartman actually is only a retaliatory prosecution case. The question is whether or not there wasn't an allegation that, if I remember correctly, Hartman did not hold that a retaliatory investigation states a section 19 of the law. I thought it had to be about an investigation. It was whether or not you could state a claim against an inspector for malicious prosecution, and whether or not to do so, you had to plead and prove a lack of probable cause. Before we get to the definition issue, which I want to do, the other thing that was interesting was this question about whether D.A. Hallinan was essentially turned into a complaining witness in the way he conducted the grand jury hearing, the suggestion being that once he said there wasn't any evidence of conspiracy, but we've had a lot of problems, he was basically speaking on his own behalf and not as a prosecutor. It's an incredibly novel argument that doesn't appear in any of the briefs. It is. It is not alleged in the complaint, and certainly I know of no case law that would support an argument that in making his closing argument to the grand jury, that by representing the state of evidence or the investigation he actually told the grand jury that there was no evidence of obstruction of justice and did not request that  he said things in an inappropriate persona, so to speak. He he the allegations in the complaint are that he made comments to the grand jury that there were inadequacies in the investigation that appeared to him to be obstructive. Well, if he agreed there was no evidence of it, then he had to be speaking as a other evidence. Then why wasn't he speaking as a complaining witness? What was he speaking as? He was a participant in the events. Well, actually, I don't know that to go back to something that counsel earlier said about him actually having personally participated in the investigation, that's not an allegation in the complaint. There's no allegation in the complaint that he was a participant in a larger set of events. So therefore, if he's standing before the grand jury and he's saying we were obstructed, the jury would certainly take him to be speaking as a precipitant witness. I don't know that that's necessarily true, given that he wasn't sworn in as a witness and given and and and. And what's he admits there's no evidence before them of the ordinary kind. Right. And he's not asking them to return indictment on him. But he's telling them what happened. Why else is he saying anything? Well, I think prosecutors do that all their time in arguments on judges and jury. No, that's not true. I mean, if he had done exactly this in a trial, it would be prosecutorial misconduct, because he'd be vouching and he'd be telling him he'd be acting as a witness. And that may be the key, Your Honor, is that it's prosecutorial misconduct, because whether he was doing it in front of a trial or a grand jury, as the cases tell us, that's a core prosecutor function. His – had he actually been sworn in as a witness and given testimony, I think I might be hard-pressed to argue that the cases suggest that he is acting as a prosecutor in that role. But in making a few random statements in the process of a incredibly – I mean, the transcript of this grand jury proceeding is unbelievably long. I have not come close to reading half of it. It's boxes. In the context of that entire grand jury proceeding, he makes a few remarks in closing statement about the course of the investigation. He all of a sudden becomes a complaining witness who loses his prosecutorial immunity. I find that difficult to reconcile with the cases that say that presenting evidence, arguing evidence to a grand jury is a core prosecutorial function, which is entitled to prosecutorial immunity. What if that – this is my question on the defamation issue, to be very precise about it. Okay. I understand that the defamation itself is not sufficient. I believe – or the reputational injury is not sufficient. I believe it's also true, and you can confirm this or tell me, I think it's true, I don't know for sure, that the case law also establishes that retaliatory defamation doesn't add anything. Is that correct? I believe that's what Paul and Pat said, and this Court has recognized that. I think the important thing to me – Then my question is, what about the hookup to the suspension? Well, and beyond that, the First Amendment, even though he has no property, let's say, aside from the suspension, his First Amendment right is violated. Isn't that a violation in and of itself without any property damage? No, I don't think that's right. I think in order to state a retaliatory – to state a First Amendment cause of action against District Attorney Hallinan, he asked – he not only has to show that he does have a property or liberty interest that was protected by the Constitution in his job, since we're talking about the damage here being a suspension or a termination. And I'd like to note, in fact, that all of the cases cited by appellants on this, as well as all of the cases that we found and cited, talk about actual termination. And although counsel mentioned termination and termination appears in their briefs, there is no allegation in the complaint that they were actually terminated from public employment. They were temporarily suspended from their leadership positions during the pendency  And that's what her question is. I was – I would assume that if they were temporarily suspended and leaving aside their policymaking role for the moment because they went to the newspapers and said something, do you doubt that would be a – and suppose it was done by the mayor because of something they told the mayor? Let me try to spin out the hypothetical a little further to you. I would concede that if the allegation were that they had engaged in protected speech and that as a result, as a direct result, they were removed either from public employment and potentially even from their, you know, leadership positions. Or suspended. Suspended. That would make out an adverse effect. And for that purpose, it doesn't matter whether they have or are at-will employees or not. I mean, that's clear in the whole Mount Healthy line of cases and Pickering and so on. I think the problems here, though, are – go beyond that. First of all, there's absolutely – let's take – remember that there are multiple plaintiffs here and, of course, the wives only. All right, well, Robinson, I know, didn't say anything to anybody. So leave that – leave him out of it. So let's talk specifically about former Chief Sanders. Former Chief Sanders' allegations are that the investigation into him and the defamation into him actually started prior to his protected speech. He then engaged in protected speech by speaking to a mayor and another official, high-level official in the city, neither of whom are named as defendants. And in those conversations, he allegedly stated that he felt that Mr. Hallinan had made unethical proposals and that as a result, the investigation – remembering this is an investigation that had no constitutional wrong in it – somehow intensified and that the defamatory statements also intensified. He does allege later on in the complaint in another section that he lost his job, but he ties that to the indictment. He says – not actually that he lost his job, I apologize – that he lost his leadership position in the SFPD as a result of the indictment. So what I hear you saying is there might have been a theory here, but it is an alleged complaint. Essentially, if he had alleged that it was because of what the mayor heard on television, Hallinan saying about him, and Hallinan was saying it for retaliatory purposes, and that led the mayor to discharge him, there might be an issue. There might be an issue there. I actually could not find a case in which a third party had made the defamatory – or had made the retaliatory act. And then he would go up the line of – up the line of, you know, command it. In other words, you have an independent board and you have somebody down the line making the complaints for retaliatory purposes, and the board doesn't have a retaliatory motive. But the fact is that the individual who causes the board to fire the person can still have a problem. Well, I don't know that that's right. I think that you have to show the court cases. But does it – I believe you have to show that the individual – that what they did was in and of itself a constitutional violation. And here all we have is defamation. What he's alleging is this defamation resulted in my – in my having been – But that leads back to the question of what does Paul and that line of cases mean when they say the defamation itself isn't enough, there has to be another interest. Correct. You understand that to mean another constitutional interest or just another interest, another injury other than the reputational injury? I think some sort of property interest or liberty interest that relies on the case. Do you have any case law saying that? Because I was looking for it and I can't find it. I can't. That's my reading of those cases. Would it be enough that the First Amendment is chilled because of your – of the consequences of making these statements? I think only – well, the First Amendment case law says only if you can show that your – that the consequences of the statements were substantially – were substantially motivated by your protected speech. And I don't know that he can show that here, and more importantly, I don't think he alleges it here. At best, what he alleges was that the consequence, his suspension, was a result of the indictment and the criminal prosecution. I think the appellant alleges that he got laid off or suspended, whatever, because of his – in retaliation for his protected speech. I mean, I think it's clear that's what they're alleging. I don't think he actually says it, Your Honor. I'd like to say – I think it's paragraph 97? Yes. He says, by instituting the wrongful grand jury proceedings and by his other wrongful conduct alleged to your right. Why isn't that enough? Why isn't that enough? Because it needs to be read in the context of the rest of that paragraph and the complaint, which is by instituting the wrongful grand jury proceedings without probable cause and by his other wrongful conduct, Chief Sanders and Deputy Chief Robinson were suspended from their public service as leaders of the SFPD while the criminal charges – I mean, it may be that your proof is going to be no – there was some automatic suspension because of the indictment, but certainly this can be read as saying, and it wouldn't be far-fetched at all to say that part of the reason that he was suspended was because this all became very public and the mayor had to do something. Now, that may not be true, and you may be able to prove it isn't true, but why is it in the complaint? It's not in the complaint because he doesn't say that, because he doesn't say the mayor heard the defamatory and other wrongful conduct alleged herein, of which the defamation is certainly a major part. But there are no allegations here about who suspended him and why. And I think in order for this to be a case in which, you know, the substantial motivating purpose is his protected speech, he has to at least do that part. But now we're getting back to the kind of discussion we were having in the other case. We're having a pleading discussion. Which I was paying attention to. And I don't think – And, you know, I don't know what would happen if we asked him to clarify that, but on a Conley v. Gibson kind of standard, I'm not sure this isn't good enough, but to say the following. There – we've alleged a whole lot of defamation triggered by – we say triggered, retaliatorily triggered. That's wrongful conduct. That caused Chief Sanders and Chief Robertson to be suspended from their public service. I don't know why that doesn't get him back past pleading. I don't think that's what's going to happen. Unless – unless you're right, and this is to – therefore becomes the key to me. I'm sorry, Your Honor. Unless your suggestion is correct that in order to hook back to the defamation, the suspension has to be from – has to be related to a property interest in his employment. And I don't know whether that's true or not. I just haven't found case law on it. And I gather neither have you. Well, and if so, it doesn't have a property interest even in at-will employment, not to be defamed so as that people that exercise the at-will decision that decide not to suspend him. I don't think that's right. And I think the best and closest case I can think of in which a former – I think it was a former Federal deputy courtroom clerk was allegedly defamed by a sheriff's and so was subsequently terminated by the presiding judge of the court. And Jeanne found that she stated neither a constitutional claim, due process claim nor retaliatory discharge claim against the Federal district court because she couldn't tie up her discharge to those defamatory statements. Well, is that your best argument here, that he wasn't discharged by Halliman or anyone in the chain of command? He was discharged because of, at best, what Halliman said. But Halliman wasn't. And in fact, Jeanne addresses that. One of the many factors that they rely on in finding that there was no constitutional claim there was that the individual who made the retaliatory statements had no ability to actually affect the constitutional deprivation claim, you know, which was the loss of her job. And in fact, they found that she didn't have a property interest in the job anyways. But – Do you have a cite for that case? It is, ma'am. We have cited in all of the briefs, which I'm going to give it to you, is this is my first case, 1994, and it's 40 F. 3rd, 1041. Would this more or less be, I'm sure the appellant would say, a jury question as to causality, as to whether or not the appellant could prove that by reason of his exercising his First Amendment rights, that the causal relationship is – that he could establish it to a jury that he was ultimately causally related to his being discharged and suffering other, you know, problems. I think if he sufficiently alleged it and made out the elements of a First Amendment retaliation claim, then yes, it would be a jury – causation would ultimately be a jury question. Genie was not a jury trial case. It was actually kicked out. I cannot remember if this is a 12 v. 6 or a summary judgment. I don't want to misrepresent it, Judge Ward. Because here, I mean, you do have a specific allegation that this caused him to be suspended. It's there, sitting there, staring us in the face. I think we would disagree. I would say how he can lose – how he can lose on causation grounds. I mean, if he's going to lose, it seems to me it has to be on the ground that even if this did cause it, it's not what it caused – it has to – to me, it has to come back to the question of whether he needs to have a property interest in his employment or a property interest in his reputation. Because if he doesn't need one of those things, I don't know why the allegation isn't good enough. Two responses quickly, Your Honor. I realize I have very little time left. First, I think you will find that he needs a property interest. Second, I think, again, that the case law holds, and it is – we did cite the elements in the brief that whether or not the allegation is that it caused him, he also must allege that the – that it was a substantial motivating factor in his dismissal. And in light of his concession, that his dismissal, or at least suspension from leadership position, was related to the pendency of the criminal charges. And I don't – Actual or unlawful conduct in vegetarian. Which, you know, in a sense, what he's doing is trying to bootstrap, you know, actionable conduct and non-actionable conduct. I guess, you know, to be throwing things out in complaints, if the complaints are even arguably adequate, is always a disturbing thing to be doing. Yeah, just one. Now, answer my question. Why does the – even an at-will employee, why does the at-will employee have a property interest in his employer not exercising the – his discretion in saying, look, the at-will – you're no longer on the payroll? Did you say why or why not? Yeah, yeah. No, why should that be a property interest, that you have a right as an at-will employee not to have your employer – your employer's mind muddled with facts that would cause him to terminate your at-will employment? Isn't that a property interest, that the – that my employer not be muddled and fire me from an at-will employment? Well, he hasn't – first of all, again, he hasn't been fired, and there are no allegations that he was actually fired. He had an adverse employment reaction here to whatever happened here. So maybe not fired, but he did have an adverse employment reaction. And the adverse employment reaction is primarily related to the indictment and the criminal charge. That's the question. Is that a jury question, or is that – No, I am saying we have a disagreement over what paragraph 97 says, but I think fairly read that's what paragraph 97 says. And in fact, that's what – that's what – If we disagree with you, if we say that also concerns his job, then where does that leave you? Does he have a property interest in – as an at-will employee? If you find that he has a property interest in – Well, that's a question. I don't think he does. I think that if you look at Jeannie and the other cases, that usually if – when the courts find a property interest, it is because some sort of State or Federal law has actually created a property interest in a job. You have this odd line of cases, which I do regard as odd, which seem to say that even for procedural due process purposes, when you are alleging that there was a First Amendment retaliatory reason, you can get procedural due process when you weren't – otherwise. I mean, I've had a hard time assimilating what those cases mean, but they're there. You get a full hearing, as a matter of fact. You're entitled to a full hearing. Well, except in this case, there are – I mean, I think there are two different issues. There's the due process clause and the First Amendment clause. We have – the point is that we have looked differently at the property interest issue. As Judge Cowan is suggesting, when there is a First Amendment component to the reason for the discharge. In other words, a lower – a lower standard in terms of the property interest. We have not then required – we have not then made a Board of Regents v. Roth kind of an inquiry into the property interest in the employment we've regarded the First Amendment retaliation issue as bringing in a sufficient interest to trigger a procedural due process – a due process requirement. My only response to that, Your Honor, I don't have a case to cite in response that says these specific facts do not create a property interest. Generally, the cases relied on do – do argue that you must have a property interest and that at-will positions are not. But you agree that there really isn't a case saying that you have to have a property interest to – in the defamation context to fill in the Paul v. Davis hole. So that's one hole. And another hole is this one in terms of where the case law sits at this point. I mean, you've been very helpful. MS. GOTTLIEB I think those are holes that I, unfortunately, cannot fill in other than arguing that the – I don't think the allegations here meet the standards for a retaliatory First Amendment claim. MS. KAYER All right. Thank you very much. We'll give you another, say, three minutes, because she went over four minutes. Okay.  GOLDSTEIN Yes. We, in fact, pled both a liberty interest and a property interest, as required by Paul v. Davis. The liberty interest is pled in paragraph 92, where we allege that the chief and the deputy chief had a right to be free from arrest. Whenever a person is arrested, as happened here, that liberty interest has been taken away. And, of course, as the Court has correctly indicated in paragraph 96 and 97, we pled the deprivation of the property interest and specifically stated that chief and deputy chief lost their public employment as a result. And it doesn't have to be fired. The fact that they had an adverse employment event, episode, was sufficient. MS. GOTTLIEB He alleged that he had a property interest in his employment, and he almost certainly did not. Independently of any First Amendment issue, I mean, he could be hired or fired at will from his job as a police officer, as a police chief. CHIEF JUSTICE ROBERTS Well, yes, but not as a result of having someone arrest him or conduct a public smear campaign against him in violation of his or in retaliation for him exercising his First Amendment freedom of speech right. That is the nexus here that I think the judge here correctly has highlighted. Another point I'd like to make is under Kalina v. Fletcher. There, the prosecutor falsely made statements under the penalty of perjury that led to the arrest of the plaintiff. And the Court held that since she was not functioning as a prosecutor when she made a false statement, she could not have been functioning as an advocate. Therefore, she was functioning as a witness. It's the same situation here. When Hellman goes to the grand jury and makes false statements to the grand jury, he's not functioning as an advocate. He's functioning as a witness. And Justice Scalia, in the Kalina case, really added a concurrent opinion. GOTTLIEB He's never sworn in as a witness. He's functioning as an unethical prosecutor. Wouldn't that be more appropriate to call him that? CHIEF JUSTICE ROBERTS You don't have to respond. He's functioning as a complaining party. He doesn't have to, again, he's a witness. He doesn't have to be sworn to be a witness. So long as he is complaining, he's a complaining party. I mean, sure, he's not a sworn witness, but that's not a requirement. He is a complaining party. He said he's a politician. So he's trying to incite these people, again, many of whom probably voted for him, to bring an indictment so that he can gain the political benefit. He can be the beneficiary of this indictment. Hopefully, he would then gain votes. GOTTLIEB Aren't you saying that he politicized his office? But you're not saying he went out and he gave testimony, that he investigated, you know, interviewed witnesses as such, which investigators do. CHIEF JUSTICE ROBERTS Well, he did interview various police officers, Lieutenant Ditto and other members of the police department, and incited the initiation of this investigation against the brass. GOTTLIEB That's what prosecutors do. Many of us that have been prosecutors have done that. CHIEF JUSTICE ROBERTS Well, that's true. But you do it in the context with the ethical rules of the prosecutor's code of ethics. Here, his own first chief deputy told him that this was unethical and that what he was doing was wrong. And he said, yes, I know, but I'm a politician. So he defines himself as something other than a prosecutor, something other than an advocate, and admits he has no evidence. He admits to the grand jury he has no evidence, and then he goes on to say, we were instructed. So he's definitely functioning as a complaining party.   GOTTLIEB Thank you very much. Thank you, Mr. Vice Counsel, for an extremely useful argument and a very interesting case. The case of Sanders v. City and County of San Francisco is submitted, and we are in recess until tomorrow morning. Thank you. MS. GOTTLIEB I have a feeling I'm going to have to come back because I didn't give her that report to get back to me.
judges: D.W. Nelson, Cowen Berzon